## X's Adoption

PIEKARSKI, J., October 9, 1943. — On August 11, 1943, petitioners, husband and wife, filed their petition seeking the adoption of a minor child whose custody they obtained on September 4, 1942.

The hearing on the petition was held before us on September 21, 1943.

The proposed adoptee was about one year old at the time custody came to petitioners, the child having been a ward of a social agency by the act of its mother and the social agency having placed the child for purposes of adoption with the consent of the mother with these petitioners.

Petitioners have no children. The husband is subject to call under the Selective Training and Service Act of September 16, 1940, 54 Stat. at L. 885. Peti-

tioners' custody of the child was barely of a month's duration when the husband petitioner notified his draft board of a change in his dependency status, notifying his draft board that he and his wife had adopted a child whose birth date was pre-Pearl Harbor. As a consequence we are advised that his classification under the Selective Service Act stood at 3-A.

We are advised that no occupational deferment has been sought by the husband petitioner. In the hearing before us he first gave his occupation as a sales manager and partner in a manufacturing concern. After his attention was called by the court to the fact that his draft classification could not be predicated upon the dependency of this child for the reason that temporary custody of a child where no relationship exists is not the basis of deferment, he predicated a possible deferment on his connection with what he called an essential war industry. We again call specific attention to his own original occupational classification as a sales manager.

His classification predicated on dependency is factually and legally unwarranted.

Deleting from the records of his draft board the unwarranted claim of dependency, it would appear that in the normal course of selection this husband petitioner would have been called for service some time ago. It is, therefore, patent that if the records as they are would not include the unfounded statement of dependency the husband petitioner might by this time have been called for military service. Consequently, it may be that someone else in his neighborhood has answered the call in the place of this petitioner.

This court has been given exclusive jurisdiction by statute in adoptions and we have sat in hundreds of adoption cases. We have entered adoption decrees involving adoptees wearing the uniforms of our Country in battle areas from the South Pacific to Africa and the northern waters. We have entered decrees of adoption

for soldiers who have answered their Country's call in times of danger when from those distant shores they have asked that their wards of long years be legally made their children, but in no case have we entered a decree where the decree may be used as an instrumentality for the avoidance of duty.

A decree in adoption is not a vehicle for the transportation of one subject to Selective Service into an area of draft deferment. The adoption statutes were not passed for that purpose and we do not intend that they be so used. Our primary concern is the welfare of the child, assuming, of course, that all other provisions of the statute are complied with. We cannot say that a child's welfare is enhanced by decreeing an adoption of that child to an intended father who has used the child's custody as a springboard to send him into his daily occupation when others thereby take his place at his Country's call.

Petitioner has the financial ability to rear this child. He and his wife are of splendid reputation in their community. If the husband petitioner by his act had not obtained an unwarranted status when his Country called, we would have had no hesitance in approving this adoption.

This court has found splendid coöperation from social agencies in their supervision of those prospective adoptions which came within their sphere of operation. We have had splendid coöperation from the particular agency to which the care of this child has been entrusted. We, therefore, desire to say that we are certain that this social agency has not failed in the performance of its obligation in this case. The failure to comply with civic obligations and responsibility rests on the shoulders of the husband petitioner.

We shall at this time refuse to enter a decree of adoption. We consider it appropriate at this time to say that if these petitioners had not gotten custody of this child another family would have, and another

"father" in all probability would not have used the child as a means for obtaining a deferment from service to his Country. We say this because, in all adoptions we have allowed, the petitioners came before us interested in the welfare of the child without seeking thereby the avoidance of civic obligation.

Consequently, we at this time refuse to enter a decree of adoption. In refusing the decree now we make this provision: If and when the husband petitioner's draft classification is properly determined on the facts as they actually are, we shall allow the matter to be reopened. The determination of the husband petitioner's status will, of course, rest with his local draft board.